Joseph BYRNE and Christine
Byrne, Plaintiffs,

v.

LIQUID ASPHALT SYSTEMS, INC.,
Russell Dean Inc., individually and
d/b/a Garlock East Equipment Co. and
Garlock Equipment Co., Defendants.

No. 00 CV 2687 GWC.

United States District Court,
E.D. New York.

Dec. 19, 2002.

Michael B. Sena, Silbert, Hiller & Sena, LLP, New York City, for plaintiffs.

Cary S. Sklaren, Herzfeld & Rubin, P.S., New York City, James R. Jarrow, Baker, Sterchi, Cowden & Rice, Kansas City, MO, for Liquid Asphalt Systems, Inc., defendant.

Eugene P. Murphy, Robert Michael Flannery, Mendes & Mount, New York City, Paul R. Smith, Abrams & Smith, P.A., Minneapolis, MN, for Russell Dean, Inc., Garlock East Equipment Co., defendants.

## MEMORANDUM OPINION AND ORDER

GREGORY W. CARMAN, District Judge, sitting by designation.

Defendants, Russell Dean Inc., individually and d/b/a as Garlock East Equipment

Company and Garlock Equipment Company, Inc. ("Defendants") filed two motions in limine on October 25, 2002:(1) a Motion to Exclude Evidence Regarding Occupational Safety and Health Administration ("OSHA") Standards; and (2) a Motion to Exclude the Testimony of Plaintiff's Expert, Alfred Harmon. The remaining Defendant in this case, Liquid Asphalt Systems, Inc., filed a motion concurring with and joining in all of the factual and legal claims set forth in Defendants' motions and supporting memoranda of law. Plaintiffs have not filed any motions in opposition to Defendants' motions. According to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiffs had ten (10) days in which to respond to the motions in limine. *See* Local Rule 6.1(b)(2). Because service was accomplished by mail, under Federal Rules of Civil Procedure, Rule 6(e), Plaintiffs had an additional three (3) days in which to respond. Pursuant to both rules, that time expired on November 13, 2002. On November 20, 2002, Plaintiffs requested an additional two-week extension of time in which to file. That extension expired on December 4, 2002. For the reasons set forth below, Defendants' Motions to Exclude are granted.

## I. Defendants' Motion to Exclude Evidence of OSHA Standards is Granted.

Defendants filed a motion on October 25, 2002 to exclude the use of OSHA standards as inadmissible against a manufacturer because such evidence is irrelevant and unduly prejudicial. Although there is no 2nd Circuit case directly on point, Defendants support their argument to exclude by citing *Sundbom v. Erik Riebling, Co.*, No. 89 Civ. 4660, 1990 WL 128920, 1990 U.S. Dist. LEXIS 11297 (S.D.N.Y. Aug. 28, 1990). In that case, the court stated that generally, "courts have been reluctant to permit evidence of OSHA regulations in actions against manufacturers" for fear "that manufacturers would be unfairly held to standards that were not intended to be imposed upon them." *Id.* at *1, 1990 U.S. Dist. LEXIS 11297, *3. The court refers to this general rule of inadmissibility of OSHA standards against manufacturers as "the shield that was intended to protect manufacturers against being measured unfairly against standards of care that do not explicitly apply to them." *Id.* The court in *Sundbom* was asked to exclude evidence of OSHA standards to be applied *against an employee*. *Id.* at *1 1990 U.S. Dist. LEXIS 11297, *1. In *Sundbom*, the *manufacturer* was attempting to introduce OSHA evidence against the plaintiff/employee to show that the product in question met the applicable OSHA standards. *Id.* at *1, 1990 U.S. Dist. LEXIS 11297, *3. While upholding the general prohibition against using OSHA standards against manufacturers, the court in *Sundbom* admitted the OSHA evidence against the employee. *Id.* at *2, 1990 U.S. Dist. LEXIS 11297, *4.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. As Defendants argue, this Court finds that the admission of OSHA standards against the manufacturers in the present case would not assist the jury because OSHA standards were not intended to impose duties upon manufacturers and have no application against manufacturers of products. The Court agrees that allowing such evidence to be introduced would likely confuse or mislead the jury.

Rule 403 of the Federal Rules of Evidence states that evidence should be

excluded if the probative value of the evidence is greatly outweighed by its prejudicial effect. FED. R. EVID. 403. OSHA standards were established to create and maintain safe working conditions between employers and employees. As Defendants argue in their supporting memorandum of law, OSHA standards have federal backing and are widely known by lay people and thus the jury will likely give OSHA evidence great weight. The Court agrees that testimony that the manufacturers in this case "violated" these standards would likely be greatly prejudicial and minimally probative considering that OSHA standards do not apply to manufacturers. Therefore, Defendants' Motion to Exclude the Evidence Regarding OSHA Standards is granted

## II. Defendants' Motion to Exclude Expert Testimony of Alfred Harmon is Granted.

Defendants filed a motion to exclude "any testimony or argument regarding any opinion of Plaintiff's expert, Alfred Harmon." (Defendants' Memorandum of Law in Support of Motion in Limine to Exclude Testimony of Plaintiff's Expert Alfred Harmon ("Defs.' Br.") at 20.) Defendants claim that the expert testimony of Alfred Harmon does not satisfy the Federal Rules of Evidence's requirements and does not pass the *Daubert* 2–prong relevance/reliability inquiry. Alfred Harmon ("Harmon") proposes to give expert testimony on the design of the asphalt kettle, the design of the asphalt tanker truck and platform, and the warnings that should have been in place on both pieces of equipment. (Report of Alfred Harmon at 2, Defs.' Ex. B.)

### A. Federal Rules of Evidence

Rule 702 of the Federal Rules of Evidence states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702.

Rule 703 of the Federal Rules of Evidence states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." FED. R. EVID. 703.

### B. *Daubert* Standard

In order to provide a more useful framework under which to apply Rules 702 and 703 in determining the admissibility of expert witness testimony, the Supreme Court set forth a two-prong relevance/reliability test. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). First, the trial judge must determine whether the expert is proposing to testify to scientific[1] knowledge. *Id.* at 592, 113 S.Ct. 2786. "The adjective 'scientific' implies a grounding in the methods and procedures of science" and "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id.* at 590, 113 S.Ct. 2786. Second, the trial judge must determine if the testimony "will assist the trier of fact to understand or determine a fact in issue." *Id.* at 593, 113

---

**1.** *Daubert* standards have been expanded to include all expert testimony, not just scientific testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

S.Ct. 2786. The evidence must be "not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786.

In *Daubert,* the Supreme Court listed several factors that should be considered in determining the reliability of expert testimony:

- whether the theory or technique relied upon has been tested
- whether the theory has been subjected to peer review and publication
- whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and
- whether the theory or method has been generally accepted by the scientific community

*Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786.

Additionally, the Second Circuit has held that when "admitting expert testimony, a trial court must determine whether the expert's reasoning and methodology can appropriately be applied to the facts of the case before it." *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 81 (2d Cir.1997). Further, the court must take into consideration the expert's background and practical experience when deciding whether an expert is qualified to render opinion testimony. *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995). A court may conclude that witnesses are insufficiently qualified because their expertise is too general or too deficient. *Trumps v. Toastmaster,* 969 F.Supp. 247, 252 (S.D.N.Y.1997).

**1. Harmon's testimony is not reliable.**

█ Under *Daubert,* Harmon's testimony must be grounded in sustainable methods and procedures and must be more than subjective belief or unsupported spec-

ulation. *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. Harmon earned an accounting degree from Long Island University in 1950. (Harmon Dep. at 7, Defs.' Ex. A.) Harmon's claimed basis for his expert knowledge is in on-the-job-training. From approximately 1952–1994, Harmon worked for U.S. Truck Body Company. (*Id.* at 6–9.) U.S. Truck Body was a small business that specialized in manufacturing and repairing truck bodies. (*Id.* at 14–15.) Harmon admits that U.S. Truck Body had no involvement with asphalt kettles or with putting asphalt tankers on truck chassis. (*Id.* at 15–16.) The company did put platforms and ladders on other types of tankers. (*Id.*) However, during the 50 years the company was in business, Harmon stated that this only happened 40–50 times. (*Id.*) Harman was also involved in a truck repair company. (*Id.* at 12–13.) However, Harmon was not involved in the day-to-day business, but rather, Harmon provided ideas on how to repair trucks and estimated repair jobs. (*Id.* at 14.)

As to asphalt kettles, Harmon has never participated in the building of any asphalt kettles. (*Id.* at 32.) Harmon has never worked with an asphalt kettle, he has only seen them in operation about 4 or 5 times. (*Id.* at 69–70.) He has never done any work with manufacturing or repairing asphalt kettles. (*Id.* at 32–33.) In his prior trial experience as an expert witness, Harmon has never testified about asphalt kettles. (*Id.* at 33.) Harmon is not a licensed engineer. (*Id.* at 81.) Harmon is an associate member of the Society of Automotive Engineers, but he has not attended any meetings of the Society in the last 10 years. (*Id.* at 103–104.) Harmon has never done any roofing on commercial buildings. (*Id.* at 55.)

Harmon stated that he did not consider himself an expert on warnings. (*Id.* at 35.) Harmon had no knowledge of what was

considered state of the art at the time the kettle or tanker was manufactured. (*Id.* at 75.) Harmon has never published nor written any articles on asphalt tankers, asphalt kettles, platforms, railings, or other safety devices. (*Id.* at 81–82.)

## 2. Harmon's testimony is not relevant.

 According to *Daubert*, in order for Harmon's testimony to be relevant, it must assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786. In this case, expert testimony is required regarding the presence of a design defect and a causal connection between that defect and plaintiff's injury. *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir.2000). Under New York law, Plaintiffs must also offer evidence of a feasible, safer, alternative design. *Fane v. Zimmer*, 927 F.2d 124, 128 (2d Cir.1991). In order for Harmon's testimony to be considered relevant: 1) it must offer an opinion as to a defect; 2) it must show a causal connection between the product defect and the plaintiff's injury; and 3) it must provide a feasible alternate design.

### a. Expert Testimony Regarding the Asphalt Kettle

During the pretrial process, Harmon stated that his expert opinions regarding the asphalt kettle would be as follows:

A more practical and safer substitute [to having the rope attached to the linkage rod] would be a metal chain that would be attached to the valve linkage rod continue [sic] through the guide ring and then connect to a rope. This rope would continue on, with appropriate guides so as not to come in contact with the hot-pipes, to the height that was needed. This method would help keep the rope from deteriorating. A warning label to alert users of this operating device of the dangers that could be encountered would have been appropriate.

(Report of Alfred Harmon at 2, Defs.' Ex. B.)

Harmon bases his expert testimony regarding the asphalt kettle on a trip to the accident scene in November 2000. (Harmon Dep. at 46–47.) He observed the kettle, but he has never done any testing on the kettle. (*Id.* at 47–48.) He never turned on this particular asphalt kettle, or any asphalt kettle. (*Id.*) He has never made any determination of how hot the asphalt kettle is at any given point. (*Id.*) Harmon has not done any testing of a chain attached to a kettle. (*Id.* at 70.) Harmon does not know what type of rope was used on the day of the accident. (*Id.* at 50.) He has no understanding of the condition of the rope on the day of the accident. (*Id.* at 57.) He did not know the age of the rope used. (*Id.*) Harmon does not know where the rope broke or what caused the rope to break. (*Id.* at 50.) Harmon has never seen the rope that was involved in this accident. (*Id.* at 47–48.) Harmon took no temperature readings on the kettle involved. (*Id.* at 49–50.) He has never taken temperature readings on any asphalt kettle while it was in operation. (*Id.*)

There is no indication from the deposition process that Harmon can or will offer any testimony as to the causal connection. (Defs.' Br. at 20.) Harmon stated that he does not know what caused the rope to break. (Harmon Dep. at 50.) As Defendants' allege, Harmon's opinion that some type of deterioration took place because of the heat would not be reliable because he did not conduct any tests of the heat produced by the kettle. (Defs.' Br. at 21–22.)

### b. Expert Testimony Regarding the Asphalt Tanker Truck and Platform

Harmon's proposed testimony is to offer the following opinions in regards to the asphalt tanker truck and platform:

1. The railing around the platform was not adequate in that it did not completely enclose the platform and provide a safe work area.
2. There was no gate at the end of the platform to prevent a person from walking directly into the opening.
3. There were no provisions for a railing around the catwalk or a hook up for a safety line.
4. The steps leading up to the platform at the rear did not have adequate clearance.
5. There were no warning labels pointing out the danger of falling while on the platform and the top of the tanker.
6. The truck tanker did not adhere to OSHA standards.

(Defs.' Br. at 24–25.)

Harmon viewed the tanker in November 2000 when he examined the accident site. (Harmon Dep. at 47.) Harmon has never been involved in putting asphalt tankers onto truck chassis. (*Id.* at 15–16.) Although Harmon does have experience in the trucking industry, his experience is limited and has not involved asphalt tankers. (*Id.* at 14–15.) As Defendants note, "[t]he fact that Mr. Harmon's company put platforms or ladders on unrelated truck bodies once a year does not constitute the type of extensive or meaningful experience contemplated for qualification under Rule 702." (Defs.' Br. at 24.)

Harmon did not measure how high the railing was on the tanker platform. (Harmon Dep. at 84.) He did not know if the railing would contact the Plaintiff above or below the knee. (*Id.* at 85.) Harmon did not measure the tallest point of the tanker truck. (*Id.* at 90.) As to alternative designs for the tanker or platform, Harmon testified that he has considered a different design, but he has never built the design, tested it, or even drawn it. (*Id.* at 90–91.) His opinions regarding the inadequate design of the platform are speculative and conjectural because Harmon admitted that he does not know where Plaintiff was standing at the time of his fall. (*Id.* at 140.) Harmon has performed no testing on his theories of design inadequacies. Harmon has no education or training in regards to product warnings. When asked about warning labels at his deposition, Harmon stated that "I am not an expert in making labels for tankers...." (*Id.* at 100.)

For the foregoing reasons, this Court finds that the testimony of Alfred Harmon fails to satisfy the standard set forth by the Supreme Court in *Daubert*. Harmon's opinions are not reliable because they are not grounded in sustainable methods and procedures. Harmon is unable to substantiate his testimony with any research or testing of any product at issue in this case. Rather, Harmon's testimony is mere subjective belief and unsupported speculation. Harmon's testimony is not relevant because Harmon lacks the basis of knowledge to enable him to testify regarding the product defects, the alternative designs, and the causal connection between the alleged product defects and Plaintiff's injuries. His proposed testimony will not assist the trier of fact to understand or determine a fact in issue because Harmon does not have the necessary background, training, or education regarding the products at issue in this case. Harmon does not propose to testify, nor does he have the necessary basis for knowledge, as to the causal connection between the products alleged defects and the plaintiff's injuries. The Court accordingly concludes that such proposed testimony would be irrelevant. Therefore, Defendants' Motion to Exclude the Testimony of Plaintiff's Expert, Alfred Harmon is granted.

## CONCLUSION

This Court finds that the probative value of the evidence regarding OSHA Standards is greatly outweighed by its prejudicial effect. Further, this Court finds that the testimony of Alfred Harmon fails to meet the standards of reliability and relevance set forth in *Daubert* and in the Federal Rules of Evidence. Therefore, it is hereby

ORDERED that Defendants' Motion to Exclude the Evidence Regarding OSHA Standards is granted; and it is further

ORDERED that Defendants' Motion to Exclude the Evidence of Plaintiff's Expert, Alfred Harmon, is granted.