Joseph **BYRNE** and **Christine Byrne, Plaintiffs,**

v.

**LIQUID ASPHALT SYSTEMS, INC., Russell Dean, Inc., individually and d/b/a Garlock East Equipment Co. and Garlock Equipment Co., Defendants.**

No. 00 CV 2687 GWC.

United States District Court, E.D. New York.

Feb. 25, 2003.

Michael B. Sena, Silbert, Hiller & Sena, LLP, New York City, for Plaintiffs.

Cary S. Sklaren, Herzfeld & Rubin, P.C., New York City, James R. Jarrow, jarrow@bscr-law.com, Baker, Sterchi, Cowden & Rice, Kansas City, MO, Eugene P. Murphy, Robert Michael Flannery, Mendes & Mount, New York City, Paul R. Smith, Abrams & Smith, P.A., Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

CARMAN, District Judge.

On January 8, 2003, Plaintiffs filed a motion asking this Court to reconsider its Memorandum Opinion and Order, dated December 19, 2002, *Byrne v. Liquid Asphalt Systems, Inc.*, 238 F.Supp.2d 491 (E.D.N.Y.2002) (hereinafter *"December Order"*). The *December Order* granted Defendants' motions to exclude the testimony of Plaintiffs' expert witness, Mr. Alfred Harmon. *Id.* at 494. Plaintiffs seek, in the alternative, leave to retain another liability expert. (Pls.' Notice of Motion at 1.) Plaintiffs' motion was accompanied by an affidavit of Plaintiffs' counsel, Mr. Michael B. Sena, "Affidavit in Support of Motion to Vacate" (hereinafter "Sena

Affidavit"). The defendants in this matter, Liquid Asphalt Systems, Inc., Russell Dean, Inc., individually and d/b/a Garlock East Equipment Co. and Garlock Equipment Co., have submitted briefs in opposition to Plaintiffs' motion.

For the reasons discussed below, this Court finds that Plaintiffs have advanced no factual matters or controlling decisions that the Court overlooked in reaching its earlier decision and therefore, Plaintiffs' motion for reconsideration of the *December Order* is denied. Plaintiffs' alternative request for leave to retain another liability expert is granted to the extent outlined below.

## BACKGROUND

The history of the *December Order* extends back to October 17, 2002. On that date, the parties attended a conference ordered by ·the Court. The Court was informed by all parties that this case was trial ready and had been pending for quite some time. Although no trial date was set at that time, both parties assured the Court that they were anxious to move the case forward. At the conference, Defendants' motions to exclude, decided by the *December Order*, were brought to the attention of the Court. In order to expedite the pretrial process, the Court instructed the parties to submit their motions and responses as soon as possible so that the case could move along. Specifically, the Court instructed Defendants to file their motions by October 25, 2002.

Plaintiffs contend that "[a]t no time was a return date ever established for [Plaintiffs' response] motion." (Sena Affidavit at ¶ 9.) Although the Court acknowledges that no return date was established for the filing of Plaintiffs' opposition papers, in the absence of a Court ordered briefing schedule, Local Civil Rule 6.1 applies. As Rule 6.1(b)(2) states, "[o]n all civil motions . . . any opposing affidavits and answering

memoranda shall be served within ten business days after service of the moving papers." Local R. of the U.S. Dist. Cts. for the S. and E. Dist. of N.Y. Civ. R. ("Local Civ. R.") 6.1(b)(2). Defendants' motions to exclude were served by mail on October 25, 2002. In addition to the ten (10) business days provided for under Local Civil Rule 6.1, under the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs were given an additional three (3) days to respond because service was accomplished by mail. FED. R. CIV. P. 6(e). As detailed in the *December Order*, pursuant to those rules, that time expired on November 13, 2002. *Byrne*, at 491.

This case is imminently set for trial and the timely disposition of pending motions is integral in assuring that this Court is able to reach the merits of this case at trial. Plaintiffs argue that "since there was no trial date, [Plaintiffs] believed that there was no urgency for the filing of our opposition paper." (Sena Affidavit at ¶ 7.) Plaintiffs assert that "no trial date has ever been set." (Sena Affidavit at ¶ 5.) The Court disagrees. In December 2001, the parties in this action appeared before District Court Judge Joanna Seybert at a pretrial conference. *CIVIL DOCKET FOR CASE # : 00–CV–2687, U.S. District Court New York Eastern (Uniondale)*, at 10 (as of January 29, 2003, 9:39 a.m.). In that conference before Judge Seybert, it was scheduled that this action would be brought to trial on April 29, 2002. *Id.* However, in early April 2002, due to a conflict with the Court's criminal trial schedule, the trial was postponed. *Id.* Counsel were advised that the case would be assigned to a visiting judge, and counsel should expect to receive instructions from that judge as to the dates for trial. *Id.* In May 2002, the parties appeared before visiting Judge William G. Young. *Id.* at 11. At that conference, the parties were notified that the case was on the running trial calendar for July 2002. *Id.* When the case

was transferred to visiting Judge Gregory W. Carman, the parties were informed that "counsel must be present for the [October] conference at which time Judge Carman will also calendar this matter for jury selection [and] trial in November." *Id.* at 12.

Regardless of the disputed time period for responding, counsel is charged with familiarity of the Local Rules and accordingly, the Court acted within its authority to render its decision in the *December Order* without Plaintiffs' response.[1]

## I. Plaintiffs' Motion for Reconsideration of the *December Order* is Denied.

 Plaintiffs styled their motion pursuant to FRCP Rule 60(b). (Pls.' Notice of Motion at 1; Sena Affidavit at ¶¶ 11–18.) Rule 60(b) is a procedural device used to challenge final judgments or final orders. FED R. CIV. P. 60(b). Under Rule 60(b) a party may seek relief "from a *final* judgment, order, or proceeding." *Id.* (emphasis added). Courts have held that a final judgment is needed to support a Rule 60(b) motion. 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 60.23 (3rd ed.1999). The *December Order* was not a final judgment or a final order, as required under Rule 60(b). Rather, the Court's *December Order* was an interlocutory order deciding a motion in limine regarding evidentiary matters. Rule 60(b) does not offer relief from interlocutory orders such as the one under scrutiny here. Although Plaintiffs claim that the

---

1. The Court's understanding of the facts regarding the time established for responding to Defendants' motions are summarized herein. According to Mr. Sena's affidavit, "[a]t no time ... were we contacted by the Court to question the status of our opposition papers." (Sena Affidavit at ¶ 9.) According to chamber's records, after the time allotted by the rules had passed without a response from Plaintiffs, the Court instructed the deputy clerk to call Plaintiffs' counsel. This request is memorialized in an e-mail dated November 14, 2002. (E-mail from Alicia Huffman, law clerk to Judge Gregory Carman, to Susan Duong, deputy clerk for the Eastern District of New York (Nov. 14, 2002, 09:45 EST) (on file with Judge Gregory W. Carman).)

The deputy clerk informed chambers that such a phone call had taken place and Plaintiffs' counsel had stated that papers would be filed shortly. Plaintiffs' counsel was to call the deputy clerk back on Monday, November 18, 2002, with a specific date when the Court could expect the opposing papers. This phone call with Plaintiffs' counsel's office is memorialized in an e-mail sent to the chambers of Judge Carman on November 15, 2002. "I just talked to Plaintiff's counsel. He is going to submit his response. He will call me back on [M]onday with the date." (E-mail from Susan Duong, deputy clerk for the Eastern District of New York, to Alicia Huffman, law clerk to Judge Gregory W. Carman (Nov.

15, 2002, 12:57 EST) (on file with Judge Gregory W. Carman).)

Additionally, Mr. Sena asserts: "We have searched our files and no one has any recollection of speaking with the Court on November 29, 2002, as indicated in the [*December Order*]." (Sena Affidavit at ¶ 9.) In fact, the *December Order* states that the deputy clerk spoke with Plaintiffs' counsel on November *20*, 2002, not November 29, 2002. *Byrne*, at 491. On November 20, 2002, the deputy clerk received a message from Mr. Sena. In that message, Mr. Sena requested another two weeks to file opposition papers. The deputy clerk relayed this message to chambers and to Judge Carman personally. As with the prior phone calls, this communication was memorialized in an e-mail to chambers. "I rec'd [sic] a message from Mr. Sena, Plaintiff's counsel and he is asking for another 2 weeks to file his opposing papers. I just want to relate this message to you. I also told [Judge Carman] the same." (E-mail from Susan Duong, deputy clerk for the Eastern District of New York, to Alicia Huffman, law clerk to Judge Gregory W. Carman (Nov. 20, 2002, 11:18 EST) (on file with Judge Gregory W. Carman).) The Court gave Plaintiffs an additional two weeks and still, no papers were filed. The *December Order* was docketed on January 3, 2003. As of that date, no opposition papers had been filed.

*December Order* "in effect ... grant[ed] summary judgment to the defendants," this allegation is not sufficient to render the *December Order* a final judgment. (Sena Affidavit at ¶ 14.)

 However, to address the issues raised by Plaintiffs' motion, the Court will consider the motion as though it were a Motion for Reconsideration under Local Civil Rule 6.3. Under Local Civil Rule 6.3, the movant must demonstrate that the court overlooked controlling court decisions or factual matters. Local Civ. R. 6.3. Motions for reconsideration allow the district court to correct its own mistake. *See e.g., Bell Sports, Inc. v. System Software Assocs., Inc.*, 71 F.Supp.2d 121, 125–126 (E.D.N.Y.1999) (granting the plaintiff's motion for reconsideration after a closer examination of the evidence). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Motions for reconsideration will not be granted if the party is merely seeking to relitigate the issue already decided by the court. *Id.* The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *In re Solv–Ex Corp. Sec. Litig.*, 198 F.Supp.2d 587, 589 (S.D.N.Y.2002).

Local Civil Rule 6.3 states that a motion for reconsideration shall be accompanied by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Civ. R. 6.3. Although Plaintiffs did not submit a memorandum of law in support of their motion, the Court will consider the arguments made in Mr. Sena's affidavit.

 As stated above, the *December Order* granted Defendants' motion to exclude the testimony of Plaintiffs' expert, Mr. Alfred Harmon. *Byrne*, at 491. However, the Court did not summarily grant Defendants' motion based on Plaintiffs' lack of response. Rather, in reaching its conclusion, the Court reviewed over one hundred pages of Mr. Harmon's deposition transcript, two opinion reports written by Mr. Harmon, and the relevant case law. In the December Order, this Court detailed its analysis and application of the Federal Rules of Evidence and the Supreme Court's rule in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to the facts of this case. The Supreme Court has made clear that district courts have a "gatekeeping" function under the Federal Rules of Evidence and are charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. Further, the Second Circuit has held that "[t]he decision to admit expert testimony is left to the broad discretion of the trial judge." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir.1995).

Plaintiffs' expert, Mr. Harmon, had proposed to give testimony on the design of the asphalt kettle, the design of the asphalt tanker truck platform, and the warnings that should have been in place on both pieces of equipment. (Report of Alfred Harmon at 2, Defs.' Ex. B attached to Defs.' Mot. to Exclude the Expert Testimony of Alfred Harmon.) In finding that Mr. Harmon's testimony should be excluded, this Court reasoned,

> "Harmon's opinions are not reliable because they are not grounded in sustainable methods and procedures." Harmon is unable to substantiate his testimony with any research or testing of any product at issue in this case. Rather, Harmon's testimony is mere subjective belief and unsupported speculation.

Harmon's testimony is not relevant because Harmon lacks the basis of knowledge to enable him to testify regarding the product defects, the alternative designs, and the causal connection between the alleged product defects and Plaintiff's injuries. His proposed testimony will not assist the trier of fact to understand or determine a fact in issue because Harmon does not have the necessary background, training, or education regarding the products at issue in this case. Harmon does not propose to testify, nor does he have the necessary basis for knowledge, as to the causal connection between the products' alleged defects and the plaintiff's injuries. The Court accordingly concludes that such proposed testimony would be irrelevant. Therefore, Defendants' Motion to Exclude the Testimony of Plaintiff's Expert, Alfred Harmon, is granted.

*Byrne,* at 496.

In support of their motion, Plaintiffs contend that "the Court was denied the overwhelming contrary authorities set forth in [Plaintiffs'] opposing brief." (Sena Affidavit at ¶ 19.) Specifically, Plaintiffs state that two cases are directly on point: *Marmol v. Brio Mfg. Co.,* No. CV 93–2659(SJ), 1997 WL 88854 (E.D.N.Y. Jan. 24, 1997) and *King v. Brandtjen & Kluge, Inc.,* No. 94–CV–411C(M), 2001 WL 1804345 (W.D.N.Y. June 20, 2001). The Court finds that these two cases are distinguishable from the facts of this case and are not controlling authority.

In *Marmol,* the court considered the qualifications of an expert in a products liability case regarding a meat-cutting band saw. *Marmol,* 1997 WL 88854, at *2. The court denied the defendant's motion to exclude the expert's testimony based on the expert's qualifications. Specifically, the expert held a Master's Degree in engineering, had worked as a senior mechani-

cal engineer and safety engineer, had designed similar equipment, and had been employed as a engineering consultant for over 25 years. *Id.* at *6. The court reasoned that the expert's "background, knowledge and practical experience" constituted " 'specialized knowledge' gained through 'experience, training or education.' " *Id.* (citing *McCullock,* 61 F.3d at 1043, in turn quoting FED. R. EV. 702).

This Court agrees that "extensive practical experience" in the relevant fields is sufficient to qualify an expert to testify under *Daubert* and the Federal Rules of Evidence. However, in the *December Order,* the Court excluded Mr. Harmon's testimony because Mr. Harmon lacked such experience in the relevant fields. As is detailed in the *December Order,* although Mr. Harmon has many years of experience in the trucking industry, his experience is with the design and manufacture of truck bodies. *Byrne,* at 494. Mr. Harmon does not have "extensive practical experience" with the manufacture or design of asphalt kettles or asphalt tanker platforms. *See id.* at *494.

Similarly, the facts that supported the experts' qualifications in *King* are distinguishable from the instant case. In *King,* the plaintiff alleged design defects in a printing press. *King,* 2001 WL 1804345, at *1. In that case, the defendant challenged three of the plaintiff's expert witnesses. *Id.* at *1. The first expert was qualified based on over twenty years of experience as a supervisor in a shop where the same kind of printing press was used. *Id.* at *2. Additionally, the first expert had "bought, serviced, and used" the same kind of printing press that was in question in the case. *Id.* at *3. The second expert witness was also extensively qualified. *Id.* at *3. He had published two articles on machine safety, was the president of a consulting firm specializing in the safety of

industrial manufacturing machinery, had performed thousands of machine safety analysis, was employed as a safety engineer and as a "industrial safety and loss control consultant," had designed and developed safety guards for printing presses, and had taught classes on industrial safety. *Id.* The third expert witness qualified because he was a professional engineer and had worked for fourteen years as a engineering consultant specializing in product evaluation, equipment failure analysis, accident reconstruction, and machine safety and design. *Id.* at *9. In *King*, the court stated that if the proffered expert has the requisite education or experience in a relevant field, courts should allow that expert to testify. *Id.* at *10.

In direct contrast, this Court explicitly found that Mr. Harmon did not have the requisite education or experience in the relevant fields. *Byrne*, at 494–95. Unlike the extensive professional and practical experiences that supported the qualification of the experts in *King*, Mr. Harmon's background, knowledge, and practical experience are insufficient to qualify him to provide reliable and relevant testimony as to the product design and warning label defects alleged in this case. *See id.* The Court declines to disturb its original holding in the *December Order*.

## II. Plaintiffs Alternative Request for Leave to Retain Another Liability Expert Is Granted.

As an alternative to their request for reconsideration, Plaintiffs seek leave to retain another liability expert. (Pls.' Notice of Motion at 1.) Notwithstanding Plaintiffs' counsel's failure to respond to Defendant's Motion to Exclude the Expert Testimony Alfred Harmon, in the interest of fairness to the individual Plaintiffs, Plaintiffs' request for leave to retain another liability expert is granted. In granting Plaintiffs' request, the Court is guided by the instructions contained in Rule 1 of the Federal Rules of Civil Procedure: "These rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1.

Plaintiffs are granted leave to retain another liability expert to the following extent: 1) Plaintiffs have forty (40) calendar days from the date that this Order is docketed to retain another liability expert and provide the necessary disclosures and expert's reports to Defendants under Rule 26(a)(2); 2) Plaintiffs shall file a status report with the Clerk of the Court within the said forty (40) days informing the Court that a new liability expert has been retained, and Plaintiffs shall send a courtesy copy to the chambers of Judge Gregory W. Carman; 3) such expert shall be made available to Defendants for deposition under Rule 26(b)(4)(A) within forty (40) calendar days after the date such witness is retained; 4) within forty (40) days after such deposition is complete, Defendants may make application to this Court for reimbursement from Plaintiffs for disbursements incurred in relation to such deposition and the expert's reasonable fees as contemplated under FRCP Rule 26(b)(4)(C).[2] This is a limited modification

---

2. FRCP Rule 26(b)(4)(C) mandates that "[u]nless manifest injustice would result, (i) the court shall require that the part seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." In most circumstances, the Court would require Defendants to bear the costs of deposing Plaintiffs' expert. However, in granting Plaintiffs leave to retain another liability expert more than 16 months after the Court ordered that discovery be concluded, the Court finds that allocating any costs of Defendants' requested deposition of Plaintiffs' newly retained expert to Defendants would result in manifest injustice.

of the scheduling order and no extensions of time will be granted.

## CONCLUSION

This Court finds that Plaintiffs have not brought to the attention of the Court any factual matter or controlling precedent that affects the Court's original decision in the *December Order* to exclude the testimony of Alfred Harmon. Therefore, it is hereby

ORDERED that Plaintiffs' motion for reconsideration is denied; and it is further

ORDERED that Plaintiffs' alternative request for leave to retain another liability expert is granted according to the following terms: 1) Plaintiffs have forty (40) calendar days from the date that this Order is docketed to retain another liability expert and provide the necessary disclosures and expert's reports to Defendants under Rule 26(a)(2); 2) Plaintiffs shall file a status report with the Clerk of the Court within the said forty (40) days informing the Court that a new liability expert has been retained, and Plaintiffs shall send a courtesy copy to the chambers of Judge Gregory W. Carman; 3) such expert shall be made available to Defendants for deposition under Rule 26(b)(4)(A) within forty (40) calendar days after the date such witness is retained; 4) within forty (40) days after such deposition is complete, Defendants may make application to this Court for reimbursement from Plaintiffs for disbursements incurred in relation to such deposition and the expert's reasonable fees as contemplated under FRCP Rule 26(b)(4)(C); 5) no extensions of time will be granted.