741 S.E.2d 34

MIRANDA C., a minor under the age of fourteen (14) years, by her Guardian ad Litem, Susan Renee Courtney, Respondent/Appellant,

v.

NISSAN MOTOR CO., LTD. and Nissan North America, Inc., Appellants/Respondents.

Appellate Case No. 2011–190226.

No. 5106.

Court of Appeals of South Carolina.

Heard Sept. 12, 2012.

Decided March 27, 2013.

C. Mitchell Brown, William C. Wood, Jr., and Brian P. Crotty, of Nelson Mullins Riley & Scarborough, LLP, and Joel H. Smith, Courtney C. Shytle, Angela G. Strickland, and Kevin J. Malloy, of Bowman and Brooke, LLP, all of Columbia; for Appellants/Respondents.

John S. Nichols, of Bluestein, Nichols, Thompson and Delgado, LLC, of Columbia; Ronnie Crosby and Mark C. Ball, of Peters, Murdaugh, Parker, Eltzroth and Detrick, PA, of Hampton; and Rodney C. Jernigan, Jr., of Jernigan Law Firm, PA, of Florence; for Respondent/Appellant.

WILLIAMS, J.

In this defective-design products liability action, Appellants/Respondents Nissan Motor Co., Ltd. and Nissan North America, Inc. (collectively, Nissan) appeal the circuit court's denial of its post-trial motion for judgment notwithstanding the verdict (JNOV) based on Respondent/Appellant Miranda C.'s (Miranda) failure to prove a feasible alternative design as required by *Branham v. Ford Motor Company*, 390 S.C. 203, 701 S.E.2d 5 (2010). On cross-appeal, Miranda argues the circuit court erred in granting Nissan's alternative request for a new trial. In addition, Miranda claims the circuit court erred in denying her motion to invalidate a special interrogatory, in which the jury found Miranda failed to prove a feasible alternative design in her case against Nissan. We affirm.

## FACTS/PROCEDURAL HISTORY

This defective-design products liability action comes before this court after a Florence County jury rendered a verdict against Nissan for $2,375,000, which was subsequently set

aside by the circuit court in the wake of the supreme court's ruling in *Branham v. Ford Motor Company*, 390 S.C. 203, 701 S.E.2d 5 (2010). In setting aside the verdict and granting a new trial, the circuit court found its failure to charge the jury on the necessity of proving a feasible alternative design was reversible error. The following facts and procedural history are relevant to the resolution of this appeal.

On the morning of February 11, 2007, nine-year-old Miranda was riding in the back seat of her parents' 2000 Nissan Xterra (Xterra). As her father attempted to make a left turn into their church parking lot, the Xterra was struck by an oncoming vehicle on the right rear passenger side. Upon impact, one of the body frame mount brackets punctured the fuel tank, resulting in a fire that caused injuries to Miranda and her mother.

As a result of Miranda's injuries, her mother filed suit on her behalf against Nissan alleging strict liability, negligence, and breach of warranty. In her complaint, Miranda alleged Nissan was liable "in failing to design and build the 2000 Nissan Xterra XE with sufficient body integrity and structure to protect the fuel system in a reasonably foreseeable collision thereby exposing raw gasoline to ignition sources" and for "failure to use reasonable care to design a crashworthy vehicle."

Following extensive discovery, the parties tried the case over the course of nine days. During trial, the circuit court and the parties discussed whether Miranda was required to prove the existence of a feasible alternative design. Despite Miranda's contention that such proof was not required, two experts testified extensively on her behalf regarding their proposed alternative designs. In response, Nissan attempted to discredit Miranda's experts' theories by proving their designs were nothing more than "ideas" or "concepts" that had yet to be tested and proven.

At the conclusion of the evidence, the circuit court denied Nissan's request to charge the jury on the necessity of establishing a feasible alternative design as a requisite element of Miranda's case. The parties and the circuit court agreed to submit seven special interrogatories to the jury. The interrogatories included six special interrogatories regarding

whether Miranda had proven strict liability and negligence, and if so, the amount of damages Miranda was entitled to for her injuries. The seventh interrogatory [1] pertained to whether Miranda had proven a feasible alternative design that would have prevented her injuries. Nissan requested the seventh interrogatory be submitted with the other interrogatories.

The circuit court denied Nissan's request, stating,

I think the best way to do it is ... to ask them to answer the interrogatory with regard to the alternative design after the fact.... It keeps them from debating about something that's not a necessary element for recovery, and they could get it confused. So I think that it's a good idea to do that, for judicial economy and it gives the appellate courts more information to rule on it without remanding it for another trial.

Despite Nissan's objection that the jury "might not be happy with [them] at that point," the circuit court concluded proof of a feasible alternative design was not required; therefore, the interrogatory would not be submitted before the verdict was rendered. Miranda's counsel reiterated the circuit court's ruling in his closing when counsel stated, "And then the last question after you've signed [the verdict form] is just a question—really, it doesn't have anything to do with the front side. But it's a question about whether or not the plaintiff had proven a feasible alternative design, essentially, something that could have prevented that."

During the circuit court's general charge to the jury on what a plaintiff must prove in a design defect case, it did not differentiate between the consumer expectations test and the risk-utility test. The court did, however, charge the jury under both tests.[2] In charging the jury, the circuit court did

---

1. This interrogatory stated as follows: "Has Plaintiff proven, by a preponderance of the evidence, that a safer feasible alternative design was available at the time the 2000 Nissan Xterra was manufactured and that such design would have prevented Plaintiff's injuries?"

2. The circuit court's charge included the following:

Then you should decide whether the particular product involved in this case had a tendency for causing damage beyond those dangers which an ordinary user with common knowledge of the product's

not include the necessity of proving a feasible design alternative pursuant to the risk-utility test based on its conclusion that feasible alternative design was not a required element of proof in a design defect case.

Prior to sending the jury out for deliberations, the circuit court informed the jury it would be answering one additional interrogatory after the verdict was returned that was irrelevant to the deliberations of the case and to the verdict. After three and a half hours of deliberation, the jury returned a verdict for $2,375,000 against Nissan. After individually polling the jury members, the circuit court stated,

> I'm once again going to have to ask you to assist us in one regard and to answer this interrogatory which says, has the plaintiff prove[n] by [a] preponderance of the evidence that a safer, feasible alternative design was available at the time the 2000 Nissan Xterra was manufactured and such design would have prevented the plaintiff's injuries. Just answer that simply yes or no. And it has to be unanimous.

Neither party objected to the content of the interrogatory or the extent of the court's instructions. After three minutes, the jury returned to the courtroom. The jury responded "no." The circuit court then excused the jury and granted the parties ten days to file post-trial motions.

Nissan submitted a post-trial motion requesting the circuit court grant it JNOV pursuant to Rule 50(b), SCRCP, or in the alternative, a new trial pursuant to Rule 59(a), SCRCP. Miranda also submitted a post-trial motion requesting the circuit court disregard the jury's response to the seventh interrogatory on the grounds that it was submitted after the jury returned its verdict and was not accompanied by sufficient instructions on what constituted a feasible alternative design.

The circuit court held a hearing on August 13, 2010, and orally denied both parties' motions. Three days later, the supreme court issued its decision in *Branham*, wherein the supreme court concluded "the exclusive test in a products

---

characteristics would anticipate. You should also consider whether the dangers associated with the use of the product outweigh the usefulness of the product, the cost involved for added safety, the likelihood of potential seriousness of the injury, and the obviousness of the danger.

liability design case is the risk-utility test with its requirement of showing a feasible alternative design." 390 S.C. at 220, 701 S.E.2d at 14. After receiving supplemental briefs as to the effect of *Branham* on the circuit court's ruling, the circuit court held a second hearing on January 4, 2011.

After hearing from both parties, the circuit court denied Nissan's motion for JNOV but granted Nissan's motion for a new trial. The circuit court acknowledged *Branham's* declaration that the risk-utility test, which requires proof of a feasible alternative design, was the sole test for a defective-design products liability case. The circuit court applied *Branham* retroactively based on its conclusion that the supreme court's decision merely recognized a new remedy to vindicate existing rights. As a result, the circuit court issued an order, in which it concluded its decision not to charge the jury on proof of a feasible alternative design was reversible error and required the grant of a new trial. Both parties appealed to this court.

**LAW/ANALYSIS**

In its appeal, Nissan claims that because proof of a feasible alternative design is a required element in a design defect case, the circuit court erred when it denied its motion for JNOV after the jury found that Miranda failed to prove a feasible alternative design. In her cross-appeal, Miranda claims the circuit court erred in refusing to invalidate the post-verdict interrogatory finding she had not proven a feasible alternative design. In addition, Miranda avers the circuit court improperly granted Nissan a new trial because the verdict was rendered pursuant to the consumer expectations test, which was the law in South Carolina at the time of trial. Moreover, she claims the circuit court charged the jury under both the consumer expectations test and the risk-utility test without objection; therefore, the two-issue rule and law of the case permit the jury verdict to stand. We address each argument in turn.

A. **Application of *Branham***

■ To resolve this appeal, we must first determine whether the supreme court's decision in *Branham,* issued after the trial of this case, should be applied retroactively or prospec-

tively. We conclude the holding in *Branham* applies to the instant case.

In *Branham,* the plaintiff, Jesse Branham, sustained serious injuries after being thrown from the backseat of a 1987 Ford Bronco II when the driver overcorrected, causing the Bronco to rollover. 390 S.C. at 208–09, 701 S.E.2d at 8. Branham brought two design defect claims against Ford Motor Company, one based on a defectively designed seatbelt sleeve and one based on a defectively designed stability system. *Id.* at 209, 701 S.E.2d at 8. Ford denied liability and, among other things, asserted the driver's negligence caused the accident. *Id.* A Hampton County jury found the driver and Ford liable and awarded Branham $16,000,000 in actual damages and $15,000,000 in punitive damages. *Id.*

On appeal, one of Ford's claims was that Branham failed to prove a reasonable alternative design pursuant to the risk-utility test. *Id.* at 218, 701 S.E.2d at 13. Ford asserted that because South Carolina law requires a risk-utility test in design defect cases to the exclusion of the consumer expectations test, Branham's failure to prove a reasonable alternative design entitled Ford to a directed verdict on Branham's claims. *Id.*

In resolving Ford's appeal, the supreme court acknowledged that our courts have traditionally employed the consumer expectations test and the risk-utility test to determine whether a product was unreasonably dangerous as a result of a design defect. *Id.* However, the supreme court concluded the consumer expectations test, while appropriate in a manufacturing defect case, was ill-suited in the design defect context. *Id.* at 220, 701 S.E.2d at 14. In support of its adoption of the risk-utility test for design defect cases, the supreme court stated,

> We hold today that the exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design....
>
> ....
>
> We believe the rule we announce today in design defect cases adheres to the approach the trial and appellate courts in this state have been following. In reported design defect cases, our trial and appellate courts have placed their

imprimatur on the importance of showing a feasible alterna-
tive design. . . .

. . . .

   In sum, in a product liability design defect action, the
plaintiff must present evidence of a reasonable alternative
design. The plaintiff will be required to point to a design
flaw in the product and show how his alternative design
would have prevented the product from being unreasonably
dangerous.

*Id.* at 220–25, 701 S.E.2d at 14–16. Having concluded the
risk-utility test would now be the sole test for proving a design
defect, the supreme court held Branham produced evidence of
a feasible alternative design at trial sufficient to withstand a
directed verdict motion. *Id.* at 219, 701 S.E.2d at 13–14.
Notwithstanding the existence of ample evidence to sustain a
directed verdict motion on Branham's design defect claim, the
supreme court reversed and remanded for a new trial pursu-
ant to the risk-utility test based on other prejudicial trial
errors. *Id.* at 225–26, 701 S.E.2d at 17.

■■ Turning to the instant case, we recognize that in
South Carolina, "[t]he general rule regarding retroactive ap-
plication of judicial decisions is that decisions creating new
substantive rights have prospective effect only, whereas deci-
sions creating new remedies to vindicate existing rights are
applied retrospectively." *Carolina Chloride, Inc. v. S.C. Dep't
of Transp.*, 391 S.C. 429, 433, 706 S.E.2d 501, 503 (2011)
(citation and quotation marks omitted). "Prospective applica-
tion is required when liability is created where formerly none
existed." *Hupman v. Erskine Coll.*, 281 S.C. 43, 44, 314
S.E.2d 314, 315 (1984). As a common rule, judicial decisions
in civil cases are presumptively retroactive. *See Harper v.
Va. Dep't of Taxation*, 509 U.S. 86, 95–96, 113 S.Ct. 2510, 125
L.Ed.2d 74 (1993) (discussing the "presumptively retroactive
effect" of civil decisions); *see also* 20 Am.Jur.2d *Courts* § 150
(2013) ("[I]t is said that, unlike legislation, which is presump-
tively prospective in operation, judicial decisions are presump-
tively retrospective.").

   Based on our reading of *Branham*, we conclude the su-
preme court intended for its decision to apply retroactively to
all pending design defect cases, including the instant case. In

*Branham,* the supreme court's pronouncement on the applicability of the risk-utility test was not a break from precedent. To the contrary, its decision "adhere[d] to the approach the trial and appellate courts in this state have been following." [3] *Branham,* 390 S.C. at 222, 701 S.E.2d at 15. The supreme court recognized no new right or cause of action; rather, it affirmed that the risk-utility test would be the *exclusive* test for design defect cases. Because the supreme court chose to abandon the consumer expectations test for the risk-utility test in design defect cases, we believe *Branham* applies retroactively.[4] *See Carolina Chloride, Inc.,* 391 S.C. at 433–

---

3. The supreme court cited the following judicial decisions in support of this statement: *Claytor v. Gen. Motors Corp.,* 277 S.C. 259, 265, 286 S.E.2d 129, 132 (1982) (adopting the risk-utility test); *Kennedy v. Custom Ice Equip. Co.,* 271 S.C. 171, 176–77, 246 S.E.2d 176, 178 (1978) (affirming verdict in favor of plaintiff by noting that plaintiff presented evidence of a design alternative); *Mickle v. Blackmon,* 252 S.C. 202, 234–35, 166 S.E.2d 173, 187–88 (1969) (discussing a manufacturer's decision to use one type of inferior material as a component part one year, but a superior material the following year—that is, a design alternative); *Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 546, 462 S.E.2d 321, 330 (Ct.App.1995) (affirming defense verdict and noting that plaintiff failed to present evidence of a feasible alternative design); *Sunvillas Homeowners Ass'n v. Square D Co.,* 301 S.C. 330, 334, 391 S.E.2d 868, 870 (Ct.App.1990) (affirming a defense directed verdict and noting that plaintiff's expert failed to discuss design alternatives); *Gasque v. Heublein, Inc.,* 281 S.C. 278, 283, 315 S.E.2d 556, 559 (Ct.App. 1984) (affirming a plaintiff's verdict and noting in detail the existence of alternative design evidence).
   We also note federal district court cases have concluded evidence of a feasible alternative design is a required element of proof in a design defect case. *See Disher v. Synthes (U.S.A.),* 371 F.Supp.2d 764, 771–72 (D.S.C.2005) (applying South Carolina law and concluding "it is 'crucial' that a plaintiff also demonstrate that a 'feasible,' or workable, design alternative exists" and "[w]ithout evidence of a feasible design alternative or that the requisite risk-utility analysis has been conducted, plaintiff cannot establish this required element of product defect as a matter of law"); *Little v. Brown & Williamson Tobacco Corp.,* 243 F.Supp.2d 480, 495 (D.S.C.2001) (noting that failure to provide evidence of a feasible design alternative is "fatal to a product liability case" under South Carolina law).

4. As highlighted by Nissan in its brief, counsel for Miranda also represented Branham in Branham's appeal before the supreme court. Branham specifically argued in his petition for rehearing that the supreme court declare its decision only applied prospectively based on fairness and justice to the parties. Despite Branham's argument, the supreme court denied his petition for rehearing.

34, 706 S.E.2d at 503 (finding judicial decision should be applied retroactively when it created no new right or cause of action; rather, it abandoned former test and restated the focus for what a landowner must prove to entitle him to damages in an inverse condemnation action); *Osborne v. Adams,* 346 S.C. 4, 12–13, 550 S.E.2d 319, 323–24 (2001) (finding retroactive application of case law clarifying which professional relationships created a non-delegable duty in common law negligence cases was appropriate because case law neither created a new cause of action nor abolished any existing immunities).

## B. JNOV

■ Having found proof of a feasible alternative design was a required element in accordance with *Branham,* we next turn to whether the jury's post-verdict finding that Miranda failed to prove a feasible alternative design entitled Nissan to JNOV. We hold it does not.

Nissan sets forth several reasons as to why the special interrogatory, submitted to the jury after the verdict, was binding on the parties as a matter of law. First, Nissan highlights the following colloquy as evidence that the parties agreed to jointly craft a special interrogatory specifically addressing proof of a feasible alternative design.

**Court:** We had mentioned earlier on in pretrial matters that you all were going to propose a verdict form. Have you all had an opportunity to do that?

**Nissan:** We've got something put together. Why don't we talk this afternoon when trial is done. We'll get you something in the morning, if that's all right.

**Court:** Very good.

**Miranda:** We could exchange things back and forth and see if we could come up with an agreement.... It may very well be—if we thought about it, that—and I always think about this after trials. And assuming one side is going to get a verdict, some of these issues that if they potentially craft the verdict form correctly, that they may—maybe if there's an appeal, it will answer it without having to come back for a retrial, if there's some way we could do that.

**Court:** Certainly, I have no objection. I really prefer more interrogatories that give[ ] the necessary information....

We agree that Miranda never objected during this dialog to submitting this special interrogatory to the jury; instead, as evidenced by the aforementioned colloquy, all parties readily agreed to this procedure. What is in dispute, however, is the significance of the interrogatory and what effect it would have on the case in the event the supreme court decided proof of a feasible alternative design was not only a factor, but a requirement, in design defect cases. Based on our review of the record, we find the circuit court's decision, and the parties' acquiescence, to submit this special interrogatory after the verdict to be improper.

Our supreme court has previously held that "[i]t is improper in a law case to submit factual issues to a jury in the form of non-binding 'advisory interrogatories.'" *Erickson v. Jones St. Publishers, LLC,* 368 S.C. 444, 480, 629 S.E.2d 653, 672 (2006). Because neither the parties nor the court agreed that the response to this interrogatory would be dispositive on the issue of liability, we find the foregoing pronouncement from *Erickson* governs the resolution of this issue. Consequently, we refuse to condone the procedure employed by the court in this instance.

The following supports our conclusion that this interrogatory was not intended to bind the parties as a matter of law on the issue of liability. First, the circuit court ruled that a feasible alternative design was not a separate requirement in a design defect case; rather, it was simply a factor to be considered on the issue of whether the Nissan Xterra was defectively designed. It was on this ground that the circuit court instructed the jury that the interrogatory was neither relevant to the verdict nor to the deliberations of the case, and as a result, the court agreed to issue the interrogatory to the jury only *after* it had returned its verdict. When the circuit court informed the jury it would need to answer this final interrogatory, it gave no explanation, foundation, or attendant instructions on the interrogatory, save its statement that the jury was required to answer "yes" or "no" and the jury's decision had to be unanimous. The lack of adequate instructions, the timing of the interrogatory's submission, and the

jury's three-minute deliberation prior to answering the interrogatory lead us to the inescapable conclusion that the jury followed the court's instructions when it answered the seventh interrogatory. *See Buff v. S.C. Dep't of Transp.*, 342 S.C. 416, 426 n. 3, 537 S.E.2d 279, 284 n. 3 (2000) (Pleicones, J., dissenting) ("Juries are presumed and bound to follow instructions of the trial judge.").

Second, the record contains no statement by the circuit court or the parties that a "no" response from the jury would be dispositive if the supreme court held proof of a feasible alternative design was a requirement in *Branham*. This lack of testimony in the record is also supported by the circuit court's refusal to grant Nissan's JNOV motion after *Branham* was published. We believe the circuit court's denial of Nissan's motion in the wake of *Branham* indicates neither the parties nor the circuit court intended for the answer to this interrogatory to be dispositive on the issue of liability.

While Nissan would assert otherwise, we find Miranda's counsel's closing argument instructive. During closing, Miranda's counsel told the jury the special interrogatory "doesn't have anything to do with the front side" of the verdict form. Because the front page of the verdict form contained questions relating to the issue of defect, we cannot infer that Miranda agreed to the submission of the interrogatory, which directly dealt with the issue of defect, knowing it was not only relevant, but dispositive on the issue of design defect. Last, the record lacks any jury argument that Miranda met or did not meet a "requirement" of a feasible alternative design, and the parties did not request argument on this issue after the verdict and response to the seventh interrogatory. We hold these omissions are inconsistent with an intention that the jury's answer on this issue would be dispositive.[5] Accordingly, we affirm the circuit court's decision to deny Nissan's motion for JNOV.

---

5. Because we find the jury's response to the feasible alternative design interrogatory was not dispositive, we decline to address Miranda's argument that the circuit court erred in denying her motion to invalidate this interrogatory. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

## C. New Trial

■ Miranda contends on cross-appeal that the circuit court erred in granting a new trial to Nissan because the jury was permitted to consider the consumer expectations test at the time it rendered its decision. Based on our conclusion that *Branham* applies retroactively, the validity of the consumer expectations test at the time of trial is of no import. Thus, we disagree and find the circuit court properly granted a new trial.

The circuit court's decision to grant or deny a new trial will not be disturbed on appeal unless the finding is wholly unsupported by the evidence or based on an error of law. *Stevens v. Allen*, 336 S.C. 439, 446, 520 S.E.2d 625, 628–29 (Ct.App. 1999).

Prior to the supreme court's decision in *Branham*, our courts traditionally employed the consumer expectations test and the risk-utility test to determine whether a product was unreasonably dangerous as a result of a design defect. *Branham*, 390 S.C. at 218, 701 S.E.2d at 13. However, the supreme court clarified in *Branham* that the sole test in design defect cases was the risk-utility test with its requiring proof of a feasible alternative design. *Id.* at 220, 701 S.E.2d at 14.

Miranda argues that in *Branham*, the majority and dissent acknowledged consideration of the consumer expectations test as a basis for liability was proper at the time of Miranda's trial. We disagree.

In *Branham*, the majority acknowledged Branham's argument that he met both tests and that the jury was charged on both tests. *Id.* at 219, 701 S.E.2d at 13. However, the majority concluded the relevant inquiry and dispositive question was whether Branham produced evidence of a feasible alternative design. *See id.* The majority highlighted evidence presented at trial that satisfied the risk-utility factors and concluded, "[w]hether this evidence satisfies the risk-utility test is ultimately a jury question. But it is evidence of a feasible alternative design, sufficient to survive a directed verdict motion." *Id.* at 219, 701 S.E.2d at 13–14. In addition, the dissent agreed with the majority that the risk-utility test is the appropriate test in design defect cases; however, it concluded the court could effectuate the same result under the

existing statutory framework by interpreting the consumer expectations test in the specific context of design defect cases. *Id.* at 244–45, 701 S.E.2d at 27–28. We do not believe these conclusions, by either the majority or the dissent, expressly condoned the use of the consumer expectations test at the time of Branham's trial. Thus, we find Miranda's argument on this ground unavailing.

■ Finally, Miranda argues that because the circuit court charged the jury on both the consumer expectations test and the risk-utility test and the jury did not specify which theory it applied to find Nissan liable, the two-issue rule and the law of the case doctrine require reinstatement of the jury's verdict. We disagree.

■ First, the two-issue rule and, thus, the law of the case doctrine, do not apply here because those doctrines apply when a party does not challenge an issue *on appeal* where there has been an opportunity to do so. *See Jones v. Lott,* 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) (holding that under the two-issue rule "where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case"). Further, as set forth above, the jury's verdict cannot be supported by the consumer expectations test for a finding of liability based on the supreme court's holding in *Branham.* While Nissan may not have challenged the circuit court's decision to generally incorporate the consumer expectations test into its jury charge, *Branham* had not yet been decided at the time and Nissan would not have had grounds for such an objection. As such, Nissan's failure to object to the inclusion of the consumer expectations test does not require reinstatement of the verdict. Because the circuit court did not properly instruct the jury on the law, we find its instructions were not only deficient, they were prejudicial to Nissan; thus, the circuit court properly granted the parties a new trial.

## CONCLUSION

Based on the foregoing, the circuit court's decision is **AF-FIRMED.**

FEW, C.J., and PIEPER, J., concur.