754 S.E.2d 714

Andreal HOLLAND, by his Guardian Ad
Litem, Peggy KNOX, Appellant,

v.

MORBARK, INC., Precision Husky Corporation, A & K Mulch,
LLC, and Watford Industry, Inc., Defendants,

Of Whom Morbark, Inc. is the Respondent.

Appellate Case No. 2011–199928.

No. 5186.

Court of Appeals of South Carolina.

Heard Sept. 10, 2013.

Decided Jan. 2, 2014.

Rehearing Denied March 10, 2014.

228

Donald E. Jonas, of Lexington, for Appellant.

Laura Watkins Jordan and Curtis Lyman Ott, of Gallivan, White & Boyd, PA, of Columbia, for Respondent.

WILLIAMS, J.

In this product liability action, Andreal Holland, by and through his guardian ad litem, Peggy Knox, (collectively, Holland) appeals the circuit court's denial of his motion to

amend his complaint and the circuit court's grant of summary judgment in favor of Morbark, Inc. (Morbark). We affirm.

## FACTS/PROCEDURAL HISTORY

On June 1, 2006, Holland was finishing his shift as a saw operator at A & K Mulch, LLC (A & K Mulch), in Alcolu, South Carolina. Holland's responsibilities included cleaning and changing the cutting knives inside a stationary 58–inch Morbark wood chipper machine[1] located outside the mill building. The chipper did not require an operator to cut the wood or oversee its operation. As a result, Holland's contact with the chipper was limited to opening and closing its hood when he cleaned and changed the chipper's knives, typically at midday and at closing.

Prior to closing that day, Holland remotely turned off the power to the chipper and "locked and tagged it out" to begin the fifteen-minute process of stopping the circular disc blades inside the chipper. After a co-worker told him a "tapping" noise was coming from the chipper, he left his work station to determine if anything was wrong with the chipper. Upon investigation, he testified he thought the blade had stopped turning and attempted to find his supervisor to report the issue. When he could not locate his supervisor, Holland returned to the machine, mistakenly determined the blades had stopped turning, and attempted to open the hood access door to the chipper. Holland testified the left pin securing the hood was missing.[2] As Holland attempted to remove the right pin and open the hood, the hood came into contact with the interior rotating fan blades. This contact caused the hood to kick back and violently strike Holland in the head.

Holland was rendered unconscious and suffered a crushed eye socket, a broken nose, a broken jaw, and a traumatic brain

---

1. In this particular wood chipper, boards were cut from raw timber, and the cutting waste was directed onto an automatic conveyor belt. This belt would feed the waste into the chipper, which would exhaust "chip piles" of mulch.

2. As originally designed and manufactured in 1996, four horizontal bolts, two vertical bolts, and two pins on either side of the chipper's hood had to be removed to open the hood. However, by the date of the accident in 2006, all of the vertical and horizontal bolts were missing from the hood.

injury. After being placed on a ventilator and undergoing extensive surgeries, Holland received rehabilitation services, including physical, occupational, and speech therapy. As a result of this accident, the Social Security Administration determined Holland was permanently disabled.

In March 2009, Holland filed an "Amended Complaint" [3] (complaint) against Morbark, A & K Mulch, Precision Husky, and Watford Industry, Inc.,[4] alleging negligence, strict liability, and breach of implied warranty. Morbark removed the case to federal court, but it was subsequently remanded to state court. The parties later consented to a scheduling order for discovery with trial to begin in February 2011.

Holland first moved to amend and supplement his complaint on July 30, 2010. In his amended complaint, he dismissed all defendants except Morbark. Additionally, he withdrew his negligence cause of action but maintained his products liability claims for strict liability and breach of implied warranty. Morbark consented to the motion, and Holland filed consent stipulations of dismissal for all other defendants.

Holland filed a second motion to amend his complaint on January 13, 2011. In his motion, he requested an amendment "to address various developments in the posture of the case since it was filed and to include additional matters learned during discovery." Holland did not attach a proposed amended complaint to this motion. Morbark then filed a motion for summary judgment on February 23, 2011.

Prior to ruling on Morbark's motion for summary judgment, the circuit court heard Holland's motion to amend. At that hearing, Holland argued his newly amended complaint would allege the wood chipper violated Occupational Safety and Health Administration (OSHA) standards and was defective based on the absence of an effective brake to decrease the shut-off time for the chipper. In support of his amendment,

---

3. The initial summons and complaint was not included in the record on appeal; as a result, we reference the March 2009 complaint as the "complaint" and the July 2010 complaint as the "amended complaint."

4. Morbark manufactured the chipper in February 1996. The chipper was owned by at least two owners before Precision Husky Corporation sold it to A & K Mulch in March 2006. Watford Industry installed the chipper at A & K Mulch.

Holland presented the deposition testimonies of two experts, Roger Davis [5] and David Clement.[6]

The circuit court denied Holland's second motion to amend on April 15, 2011. The court concluded it had the discretion to amend Holland's complaint pursuant to Rule 15, SCRCP, but Morbark proved it would be prejudiced by such an amendment. In so holding, the circuit court found Holland filed this motion following the expiration of all scheduling order deadlines, the conclusion of all liability depositions, and the transfer of the case to the trial roster. Specifically, the circuit court held,

> [Holland] has long known about the possible relevance of the OSHA standard and the defect theory based on the absence of a brake because his own experts ... extensively discussed these two topics during their respective depositions ...
>
> ...
>
> Granting [Holland]'s motion would cause significant increases in discovery costs, at least some of which could have been avoided if [Holland] had timely moved. At this point, discovery would need to be re-opened to allow [Holland] to identify an expert regarding the brake option and Morbark to retain a rebuttal expert. Moreover, many of the liability depositions would need to be re-taken to delve into the witness' testimony about, among other things, the sale of the chipper without the optional brake, the costs associated with an optional brake, the operation of the chipper with and without such a brake, and the industry custom or standard regarding a brake.

After ruling on Holland's motion to amend, the circuit court issued an order granting summary judgment in Morbark's

---

5. Davis, a mechanical and forensic engineer, testified at his deposition regarding the dangers presented by the run down time of the wood chipper after it powered off, the effectiveness of warning and safety mechanisms incorporated into the wood chipper, alternative safety and warning designs, and the requirements of 29 C.F.R. § 1910.212(a)(2), which states, "The guard shall be such that it does not offer an accident hazard in itself."

6. Clement, a human factors expert, testified regarding the sufficiency of the wood chipper's warnings and instructions as well as operator capabilities, perception, and awareness.

favor on June 2, 2011. In its order, the circuit court held Holland's design defect claim failed as a matter of law because (1) the chipper was not in the same condition at the time of the accident as when it left Morbark's hands; (2) Morbark's failure to incorporate additional safety features did not render the wood chipper unreasonably dangerous when no other manufacturer in the industry had incorporated the optional safety device advanced by Holland's expert; and (3) Holland failed to prove a reasonable alternative design as required by *Branham v. Ford Motor Co.*, 390 S.C. 203, 701 S.E.2d 5 (2010). In addition, the circuit court dismissed Holland's failure to warn claim because the chipper contained numerous decals and warnings and was accompanied by the operator's manual when Morbark originally sold it. Moreover, because Holland admitted it was dangerous to open the hood before the chipper had stopped turning, the court concluded Morbark could not be liable for failing to warn Holland of a danger he already recognized.

Holland timely moved to reconsider the denial of his motion to amend his complaint as well as the order granting summary judgment. The circuit court denied Holland's motion for reconsideration. Holland appealed.

## ISSUES ON APPEAL

 I. Did the circuit court err in denying Holland's motion to amend his complaint?

 II. Did the circuit court err in granting Morbark's motion for summary judgment?

## LAW/ANALYSIS

### I. Motion to Amend

Holland first contends the circuit court erred when it denied his second motion to amend because his proposed amendment did not include any new causes of action; rather, it further specified how the wood chipper was defective. Moreover, Holland claims the circuit court denied his second amendment based in part on its erroneous conclusion that the court had already granted Holland's first motion to amend.

In response, Morbark contends Holland was already aware of expert testimony advancing a violation of OSHA yet Holland chose to advance these allegations after the expiration of

all scheduling deadlines and the conclusion of all liability depositions. Morbark argues it would be prejudiced by Holland's decision to advance new theories "at the eleventh hour" because it would require the reopening of discovery at a significant cost to Morbark. We agree with Morbark.

We first address Holland's claim that the circuit court failed to grant his first motion to amend. On July 28, 2010, Holland moved to amend his complaint by dismissing all defendants, except Morbark, and by withdrawing his negligence cause of action. No separate written order was entered granting the amendment and dismissal of the other defendants. However, evidence in the record establishes that the circuit court permitted, and the parties consented to, Holland's amendments. First, the circuit court signed all three consent stipulations of dismissal for Precision Husky, A & K Mulch, and Watford Industry, which were filed on August 23, 2010. All filings and appearances after Holland's first motion only involved Holland and Morbark.[7] Second, the circuit court explicitly held in its April 2011 order denying Holland's second motion to amend that it had already granted Holland's first amendment "at a hearing on October 8, 2010." This finding is supported by the court's roster from that date allotting fifteen minutes of argument for Holland's motion to amend. Last, Holland relied upon his amended complaint in his opposition to Morbark's summary judgment motion. We do not believe Holland would have relied upon it for purposes of defeating summary judgment if he was not convinced the amended complaint was properly before the court. Regardless, after reviewing Holland's brief and both his March 2009 complaint and his July 2010 amended complaint, we find any "additional specifications" advanced in Holland's amended complaint were already alleged in his March 2009 complaint. Thus, all the relevant allegations were properly before the circuit court when it considered Holland's second motion to amend.

---

7. Holland filed two motions to compel on August 4, 2010, and September 7, 2010, which included all defendants in the caption but only sought responses to interrogatories from Morbark. In addition, Holland filed a motion for a protective order on January 13, 2011, which copied only Curtis L. Ott, attorney for Morbark, and Darrell W. Carter, attorney for Morbark's insurance carrier, Axis Insurance Company. Further, Holland's second motion to amend and ensuing motion for reconsideration were only directed to Morbark.

■ Next, we address whether the circuit court properly denied Holland's second motion to amend.

Rule 15, SCRCP, provides,

A party may amend his pleading once as a matter of course at any time before or within 30 days after a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial roster, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires and does not prejudice any other party.

■ It is well established that a motion to amend is addressed to the circuit court's sound discretion, and the party opposing the motion has the burden of establishing prejudice. *Foggie v. CSX Transp., Inc.*, 313 S.C. 98, 102, 431 S.E.2d 587, 590 (1993). Prejudice occurs when the amendment states a new claim or defense that would require the opposing party to introduce additional or different evidence to prevail in the amended action. *Ball v. Canadian Am. Exp. Co., Inc.*, 314 S.C. 272, 275, 442 S.E.2d 620, 622 (Ct.App.1994).

We find the circuit court properly denied Holland's second motion to amend. First, Holland was in possession of information that would have alerted him to the potential relevance of an OSHA brake defect claim after his own experts, Roger Davis and David Clement, were deposed in August and September 2010.[8] Despite this, Holland only stated in his motion that he wanted to "include additional matters learned during discovery." It was not until the court's hearing on the motion in March 2011 that Holland expounded on this theory.

---

8. As noted by Morbark, it is conceivable that Morbark would have concluded Holland would *not* assert an OSHA brake defect claim based on Holland's experts' testimonies. Davis stated he had no opinion when asked if he thought that the chipper was defectively designed without a brake. Clement, on the other hand, stated that it would be "ungodly expensive" to incorporate a brake in a wood chipper that size. Thus, at the time Holland requested this amendment, he arguably had not retained an expert who could support his OSHA brake defect theory.

We agree Holland was not seeking to add a new cause of action, but the parties had conducted extensive discovery prior to Holland's amendment. We acknowledge the undertaking of additional discovery does not establish per se prejudice. However, the addition of the OSHA brake defect theory would have required, at a minimum, the hiring of rebuttal experts and the taking of additional depositions. In these circumstances, granting this amendment would result in an inevitable delay on the eve of trial. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir.1986) (finding prejudice can result when a proposed amendment is offered shortly before or during trial and raises a new legal theory that would require gathering and analysis of facts not already considered by opposition). Further, the amendment did not occur until over two years after Holland first filed his complaint in 2009. As a result, we find Morbark would have been prejudiced at this stage in the case. *See Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 632, 743 S.E.2d 808, 813 (2013) (finding circuit court properly denied party's motion to add a cause of action for violation of SCUTPA to its complaint because amendment did not occur until three years after filing of complaint and undertaking of extensive discovery, particularly when there were no significant factual developments that warranted the untimely amendment); *Ball*, 314 S.C. at 275, 442 S.E.2d at 622 ("Prejudice occurs when the amendment states a new claim or defense which would require the opposing party to introduce additional or different evidence to prevail in the amended action.").

■ Furthermore, even if the circuit court permitted this amendment, Holland could not successfully sue Morbark for any injuries based on an alleged violation of OSHA because OSHA only regulates employers, not manufacturers. *See* 29 U.S.C.A. § 653(b)(4) ("Nothing in this chapter shall be construed ... to enlarge or diminish or affect ... the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."); *see also Byrne v. Liquid Asphalt Sys., Inc.*, 238 F.Supp.2d 491, 492 (E.D.N.Y.2002) (excluding evidence of OSHA standards in a products liability action against a manufacturer on grounds that OSHA standards were established to

create and maintain safe working conditions between employers and employees and "were not intended to impose duties upon manufacturers and have no application against manufacturers of products"). As a result, we affirm the circuit court's denial of Holland's motion to amend his complaint.

## II. Summary Judgment

Next, Holland claims the circuit court erred in several respects when it granted summary judgment on Holland's claims for design defect and failure to warn. We disagree.

### a. Design Defect

■■■ We first address Holland's claim that the circuit court erred in relying on *Branham* and its requirement of proving a reasonable alternative design in design defect cases. As the supreme court held in *Branham*, and this court recently reiterated in *Miranda C. v. Nissan Motor Co., Ltd.*, 402 S.C. 577, 741 S.E.2d 34 (Ct.App.2013), the requirement of proving a reasonable alternative design in a design defect case is mandatory. *See Branham*, 390 S.C. at 225, 701 S.E.2d at 16 (holding that in a product liability design defect action, the plaintiff must present evidence of a reasonable alternative design and will be required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous); *Miranda C.*, 402 S.C. at 586, 741 S.E.2d at 39 (citing to *Branham* and holding the same). As a result, the circuit court properly considered *Branham* when it found Holland failed to provide evidence of a reasonable alternative design sufficient to withstand summary judgment.[9]

To prove a reasonable alternative design, Holland was required to set forth some evidence of an "alternative design,"

9. Although Holland claims the application of *Branham's* risk-utility analysis should be prospective, this court concluded otherwise in *Miranda C. See Miranda C.*, 402 S.C. at 587, 741 S.E.2d at 40 ("Because the supreme court chose to abandon the consumer expectations test for the risk-utility test in design defect cases, we believe *Branham* applies retroactively."). In addition, the supreme court inferred the same in *Branham* when it denied Branham's petition for hearing despite Branham's contention that the risk-utility test should only have prospective application. *Id.*

which necessarily included the "consideration of costs, safety, and functionality associated with the alternative design." *Id.* We find Holland failed in this regard. Holland's own expert, Roger Davis, stated he was unaware of anyone, including himself, in the industry that had performed a feasibility analysis for an alternative design. Davis admitted he had not prepared an actual design for an interlock system, instead stating his design was only "conceptual." Because a conceptual design is insufficient to establish a reasonable alternative design, we find Holland's claim for design defect fails as a matter of law. *See Holst v. KCI Konecranes Int'l Corp.*, 390 S.C. 29, 37, 699 S.E.2d 715, 719–20 (Ct.App.2010) (finding the circuit court properly granted summary judgment when the plaintiff failed to present evidence of a feasible alternative design or that a risk-utility analysis was conducted); *Bragg v. Hi–Ranger, Inc.*, 319 S.C. 531, 546, 462 S.E.2d 321, 330 (Ct.App.1995) (finding the circuit court properly granted a directed verdict and holding the plaintiff must introduce evidence that an alternative design is feasible and cannot rely upon mere conceptual design theories).

Because proof of a reasonable alternative design is necessary to establish whether a product is unreasonably dangerous in a design defect case, we decline to address Holland's remaining claims of error pertaining to his design defect cause of action. *See Branham*, 390 S.C. at 218–19, 701 S.E.2d at 13 (finding a plaintiff must show the design of a product caused it to be "unreasonably dangerous" in order to successfully advance a design defect case and further holding proof of whether a product is "unreasonably dangerous" must be demonstrated by evidence of a reasonable alternative design); *Bragg*, 319 S.C. at 543, 462 S.E.2d at 328 (requiring the plaintiff in any strict products liability case to show: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant); *see also Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## b. Failure to Warn

Holland also contends the circuit court erred in granting summary judgment on his failure to warn claim. We disagree.

All products liability claims share common elements; therefore, Holland's failure to establish a reasonable alternative design in his design defect claim prevents Holland from succeeding on his failure to warn claim as a matter of law. *See Branham,* 390 S.C. at 210, 701 S.E.2d at 8 (holding the failure to establish any one of the three elements in a companion products liability claim is fatal to all related products liability claims); *Lawing v. Trinity Mfg., Inc.,* 406 S.C. 13, 27, 749 S.E.2d 126, 133 (Ct.App.2013) (citing to *Branham* and stating all products liability causes of action turn on the question of reasonableness).

Even if the success of Holland's failure to warn claim did not hinge on whether the wood chipper was unreasonably dangerous, we find the circuit court properly granted summary judgment on Holland's failure to warn claim.

 "A product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries caused by the use of the product if the user ignores the warning." *Anderson v. Green Bull, Inc.,* 322 S.C. 268, 270, 471 S.E.2d 708, 710 (Ct.App.1996). Further, a seller is not required to warn of dangers that are generally known and recognized. *Id.* at 271, 471 S.E.2d at 710. It follows, then, that a product cannot be deemed either defective or unreasonably dangerous if a danger associated with the product is one that the product's users generally recognize. *Id.*

 When the wood chipper left Morbark's hands in 1996, it contained numerous decals and warnings and was accompanied by an operator's manual. Morbark acknowledged these warnings and decals were not present when Holland was injured. Instead, Precision Husky, the company that sold the wood chipper to A & K Mulch, had affixed its own warnings and decal in three separate places on the hood of the chipper. Precision Husky's decal depicted an individual being struck in the head by the hood of the chipper if opened while the disc was turning and stated, "Never operate chipper with missing

hood bolts. Never operate chipper without hood lock secured. Never open hood while disc is turning. To confirm disc is stopped, visually check disc shaft or drive wheel." We find these warnings sufficiently highlighted any potential dangers so that the wood chipper would be "safe for use if the user follow[ed] the warning[s]." *Id.* at 270–71, 471 S.E.2d at 710.

Regardless, we find it would be improper to hold Morbark liable for failure to warn. First, Morbark affixed warnings and instructions to the machine when it was manufactured. Further, the warnings at issue were designed by Precision Husky, not Morbark. Additionally, Morbark sold the machine ten years prior to the accident, and three intervening owners had used the machine before Holland was injured. Last, Holland admitted during his deposition that he was aware he could be hit in the head by the hood if he opened the hood prematurely. This admission demonstrates he appreciated the danger associated with the chipper. *Id.* at 271, 471 S.E.2d at 710. ("[A] product cannot be deemed either defective or unreasonably dangerous if a danger associated with the product is one that the product's users generally recognize."). Whether Holland knew the blades were turning when he opened the hood on the day in question is immaterial to his failure to warn claim because Morbark did not have a duty to warn Holland of a danger he already recognized. *See id.* at 271, 471 S.E.2d at 710 ("[A] seller is not required to warn of dangers that are generally known and recognized."). As a result, we affirm the circuit court's decision to grant summary judgment on Holland's failure to warn claim.

## CONCLUSION

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**

SHORT and THOMAS, JJ., concur.