# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Steven Newbern and Claudia Newbern, Appellants,

v.

Ford Motor Company, Respondent.

Appellate Case No. 2016-002209

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

Opinion No. 5680
Heard June 4, 2019 – Filed August 21, 2019

**AFFIRMED**

William E. Applegate, IV, of Yarborough Applegate,
LLC, of Charleston, Kathleen Chewning Barnes, of
Barnes Law Firm, LLC, of Hampton, and Stephen E. Van
Gaasbeck, of Law Offices of Stephen E. Van Gassbeck,
of Helotes TX, for Appellants.

Joseph Kenneth Carter, Jr. and Carmelo Barone
Sammataro, both of Turner Padget Graham & Laney, PA,
of Columbia, Bettis Cantelou Rainsford, Jr., of Raymond
J. Doumar, P.C., of Augusta GA, and Robert L. Wise, of
Bowman & Brooke, LLP, of Richmond VA, for
Respondent.

**LOCKEMY, C.J.:**  Steven and Claudia Newbern sued Ford Motor Company
alleging strict liability and negligence claims against Ford because of injuries Mr.

Newbern suffered when the airbag in their vehicle deployed during an accident. On appeal, the Newberns argue the trial court erred in granting Ford's motion for directed verdict. Finding a lack of evidence in the record to support the Newberns' claims, we affirm.

## FACTS

On December 28, 2012, the Newberns were involved in an accident with another vehicle driven by Stephen McGee. Claudia Newbern was diving the couple's 2009 Ford Focus and Steven Newbern was riding in the passenger seat when McGee's vehicle hit the right front passenger side of the Newberns' Focus. The Newberns' driver and passenger airbags deployed during the accident. Mr. Newbern suffered severe injuries to his face and eye resulting in loss of his right eye. The Newberns filed suit against Ford in May 2013 claiming these injuries were the result of a defective airbag system. The Newberns claim Ford should be held responsible under strict liability and negligence theories.

During the trial before a jury, the Newberns called Ramaniyam Krishnaswami, a Ford employee, as an adverse witness to testify as to the design of the airbag sensing system. At the close of the Newberns' case, Ford moved for a directed verdict arguing the Newberns did not prove the existence of a design defect and did not present expert testimony on the defectiveness of the design or a feasible alternative design. The next day, September 16, 2016, the trial court granted Ford's motion. The Newberns filed a motion for a new trial, which the trial court denied. This appeal followed.

## STANDARD OF REVIEW

When ruling on a motion for directed verdict, "the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt." *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). The appellate court applies the same standard in reviewing the trial court's grant or denial of a motion for directed verdict. *Allegro, Inc. v. Scully*, 418 S.C. 24, 32, 791 S.E.2d 140, 144 (2016). "An appellate court will reverse the trial court's grant of a directed verdict when any evidence supports the party opposing the directed verdict." *Graves v. Horry-Georgetown Tech. Coll.*, 391 S.C. 1, 7, 704 S.E.2d 350, 354 (Ct. App. 2010).

## LAW/ANALYSIS

The Newberns claim the airbags in their 2009 Ford Focus deployed when they should not have due to a defectively designed airbag system. The Newberns brought this cause of action under the crashworthiness doctrine. As explained by our supreme court in *Donze v. General Motors, LLC*, 420 S.C. 8, 19, 800 S.E.2d 479, 485 (2017), the underlying premise of the crashworthiness doctrine is that "manufacturers are only liable for enhanced damages caused by a design defect when the defect does not cause the initial collision . . . ." "Liability for a design defect may be based on negligence, strict liability or warranty." *Priest v. Brown*, 302 S.C. 405, 411, 396 S.E.2d 638, 641 (Ct. App. 1990). The Newberns alleged strict liability and negligence as the bases of their claims.

Under South Carolina law, in order to recover in a products liability action, a plaintiff must prove: "(1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant." *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 539, 462 S.E.2d 321, 326 (Ct. App. 1995). If the product liability action is based on strict liability when a design defect is alleged, "the plaintiff must prove the product, as designed, was in an unreasonably dangerous or defective condition. The focus here is on the condition of the product, without regard to the action of the seller or manufacturer." *Id.* at 540, 462 S.E.2d at 326 (citations omitted). S*ee also* S.C. Code Ann. § 15-73-10 (2005) (imposing liability on seller for defective products). In *Branham v. Ford Motor Company*, 390 S.C. 203, 220, 701 S.E.2d 5, 14 (2010), our supreme court adopted the risk-utility test as the exclusive test in products liability design cases. Under the risk-utility test, a product is "unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product." *Bragg*, 319 S.C. at 543, 462 S.E.2d at 328. In order to satisfy this test, the plaintiff must present proof of a feasible alternative design that would have made the product safer. *Miranda C. v. Nissan Motor Co.*, 402 S.C. 577, 591, 741 S.E.2d 34, 42 (Ct. App. 2013).

If the design defect claim is brought under a negligence theory, the plaintiff bears the additional burden of demonstrating the defendant "failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault." *Bragg*, 319 S.C. at 539, 462 S.E.2d at 326.

At trial and on appeal, Ford argued the Newberns failed to provide evidence of the design defect and under the required risk-utility test, the Newberns failed to

provide evidence of a safer alternative design. During the trial, the Newberns did not call their own automotive design expert. Instead, the Newberns called Krishnaswami, who Ford designated as its representative and airbag design expert prior to the trial, to prove both negligent design and strict liability.

Krishnaswami began working for Ford in 1993 and at the time of the trial, Ford employed him as a design analysis engineer, but he was not involved in the design of the 2009 Ford Focus. Krishnaswami testified as to Ford's design process. He explained Ford performs hundreds of crash tests during the design of a new car. Ford uses the crash test data to determine how to calibrate and where to put the airbag sensors, which tell the vehicle's restraint system it has been in a crash and whether an airbag should deploy. Krishnaswami testified to the jury that Ford purchases its sensors from Bosch. Ford sends Bosch requirements for the sensors based on the crash tests it performed. The Newberns asked Krishnaswami about a specific crash test, 15978, which they purport and Krishnaswami agreed is the most similar to the Newbern's crash. Based on this crash test, Krishnaswami testified that if the passenger is wearing a seatbelt, the airbag should be suppressed – meaning not deployed. The calibration report for this crash also indicates no airbag deployment. Ford sent this information to Bosch. However, Bosch's calibration resulted in deployment for this type of crash. Krishnaswami acknowledged, "[Bosch] did not - - they were not able to achieve the initial targets . . . ."

Krishnaswami also conceded airbags can cause injuries, including eye injuries. He acknowledged no one wants to have an airbag deploy when it is not necessary. Lastly, Krishnaswami testified as follows while being examined by the Newberns' counsel:

> Q.    Would it be unreasonably dangerous to provide a
>        person with a system that will deploy airbags when
>        they are not needed?
>
> A.     Yes. It depends on the occupant kinematics.

The Newberns assert Krishnaswami's testimony along with the supporting calibration report provide evidence of a design defect because the airbag deployed when Ford's own data indicated that it should not deploy. We disagree.

Krishnaswami's testimony centered on Ford's design process. Krishnaswami did not offer testimony opining on the dangerousness or defectiveness of the 2009 Focus's airbag system. Krishnaswami explained the requirements Ford sent to

Bosch were "initial targets," rather than requirements. If the targets sent to Bosch are not met, then Ford studies those targets and determines whether it can accept the calibration. Krishnaswami acknowledged design changes could be made if the calibration does not meet the target, but he advised the calibration has to take into account many crash modes. Krishnaswami stated the crash modes are interconnected. The calibration in one crash mode can affect the airbag's performance in another crash mode. Krishnaswami explained as follows:

> The thing is if you delay the airbag for a certain crash mode you may end up delaying for other modes too. That's why the system has to be optimized. Then we go back and study is it okay or is it absolutely okay to deploy an airbag in this crash mode based on the studies and tests and then we can accept it.

He added,

> [Y]ou cannot look at one crash test in isolation and that's what I was trying to say. What you do in one crash affects other crashes because the system is tied together. One crash mode is not independent of another crash mode. The signal pattern, even though it varies, it is very important to bring all the data together and look as [sic] a system as a whole. And that's why we would deploy in some modes where the initial target was not to deploy to begin with.

Ford accepted what it found to be the optimal calibration as Ford was satisfied with the overall target. Krishnaswami described the calibration accepted by Ford as "good." Krishnaswami's testimony does not indicate that the restraint system was defective. To the contrary, his testimony serves to explain how Ford came to the calibration it adopted for the 2009 Focus. In our review of Krishnaswami's testimony, in addition to the record as a whole, we did not find any evidence to support the Newberns' allegations that the airbag system was unreasonably dangerous or defective.

In addition, we do not find evidence of an alternative design that would have made the airbag system safer as required by *Branham*. *See Branham*, 390 S.C. at 225, 701 S.E.2d at 16 ("[I]n a product liability design defect action, the plaintiff must present evidence of a reasonable alternative design. The plaintiff will be required

to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous.").

Krishnaswami testified that if Ford found the exceptions in the calibration report unacceptable, Ford could move the position of the sensor, add reinforcement to the crash path, or increase the crash threshold. The Newberns rely on this testimony to support a claim of a feasible alternative design. However, Krishnaswami did not offer any testimony as to how employing these alternatives would have made the airbag system safer or otherwise satisfied a risk-utility analysis. Furthermore, his testimony indicates that because the crash modes are interconnected—redesigning the sensing could result in an airbag not deploying when Ford determined it should deploy. Therefore, modifications to the airbag system could result in a more dangerous product rather than a less dangerous product.

After reviewing the record, and more specifically Krishnaswami's testimony, we fail to find evidence of both defective design and a feasibly alternative design that would have made the airbag system safer. Therefore, the trial court did not err in granting Ford's motion for a directed verdict on the strict liability cause of action.

The Newberns also alleged Ford is liable due to its negligent design of the airbag system. However, the Newberns failed to present evidence of Ford's failure to exercise due care.

The Newberns assert Ford's deviation from its own internal policies demonstrates its deviation from the standard of care. They cite to Ford's haste in getting the Focus into production as the reason Ford was willing to make exceptions in the sensor calibration. Several South Carolina cases support the Newberns' position that deviation from a company's own policies is relevant to show the company deviated from the standard of care. *See Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 140, 638 S.E.2d 650, 659 (2006) ("The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines."); *Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 397, 618 S.E.2d 903, 906 (2005) ("Although federal regulations provide the standard of care, Respondents' deviation from their own internal policies is, nevertheless, admissible as evidence that Respondents deviated from that standard of care.").

The record provides little evidence of Ford's actual policies. The Newberns did not offer any experts to testify that Ford violated any policies or breached any standard of care. While Krishnaswami stated modifications are possible, he did not testify about a Ford policy requiring modifications when it did not meet the initial targets.

Moreover, the Newberns did not offer any evidence as to how Ford violated its policies in the design of the 2009 Ford Focus. Therefore, the trial court correctly granted Ford's motion for a directed verdict on the Newberns' negligence cause of action.[1]

**CONCLUSION**

Based on our review of the record, and more specifically Krishnaswami's testimony, we are unable to find any evidence in the record to support a finding that the airbag system in the Newberns' Ford Focus was unreasonably dangerous and defective to the point that the use of the product outweighs its utility. Therefore, the trial court correctly granted the directed verdict and its order is

**AFFIRMED.**

**SHORT and MCDONALD, JJ., concur.**

---

[1] Ford also argued the lack of expert testimony as an additional ground for its motion for directed verdict. Specifically, Ford argued that expert testimony is required to prove defective design, citing to our supreme court's decision in *Watson v. Ford Motor Company*, 389 S.C. 434, 445, 699 S.E.2d 169, 175 (2010). In light of our disposition of the case, it is not necessary to address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).